IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISON

| | |
|---|---|
| TONY WALKER, | ) |
|     Plaintiff, | ) |
| v. | )   No. 2:25-cv-02106-TLP-cgc |
| | )   JURY DEMAND |
| BNSF RAILWAY COMPANY, | ) |
|     Defendant. | ) |

**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Tony Walker brings two claims against his employer Defendant BNSF Railway Company ("BNSF"). (ECF No. 1.) The first is a negligence claim under the Federal Employers' Liability Act. (*Id.* at PageID 6.) The second is a retaliation claim under the Federal Railroad Safety Act ("FRSA"). (*Id.* at PageID 7.) Almost immediately Defendant moved for summary judgment on the FRSA claim. (ECF No. 11.) Plaintiff opposed the Motion. (ECF No. 22.) And Defendant replied. (ECF No. 23.) For the reasons below, the Court **DENIES** Defendant's Motion for Partial Summary Judgment **WITHOUT PREJUDICE**.

**BACKGROUND**

The Parties dispute some, but not all, of the relevant facts.[1] BNSF employed Plaintiff as a switchman. (ECF No. 22-1 at PageID 215.) Because switchmen work in a safety-sensitive environment, they must immediately report safety concerns, workplace injuries, and acts of workplace violence. (*Id.*) And as far back as 1997, Plaintiff reported "work-related injuries

---

[1] The Court takes these facts from Plaintiff's response to BNSF's Statement of Undisputed Material Facts.

1

and/or medical conditions." (*Id.* at PageID 216.) BNSF asserts that it did not retaliate against Plaintiff for making those reports. (*Id.*) But Plaintiff claims that BNSF retaliated and intimidated him in response to some of those reports. (*Id.*) Also during his employment with BNSF, Plaintiff reported unsafe working conditions as often as "three times a month." (*Id.*) BNSF asserts that it never asked him to stop reporting his concerns. (*Id.*) But Plaintiff alleges that at least three times he faced retaliation for doing so. (*Id.*)

This brings us to the incident that forms the basis for this Complaint. Plaintiff used a company car as part of his job. (*Id.*) And in early 2022, BNSF sent that car to an external repair shop. (*Id.*) Although someone other than Plaintiff reported that the car needed some repairs, he was part of the "whole crew" that had walked around the vehicle with a supervisor and pointed out its various problems. (*Id.*) One of those problems was that the front passenger seat could not be adjusted forwards or backwards. (*Id.*)

The shop repaired everything except for the front passenger seat. (*Id.* at PageID 217.) Rather than fixing the adjustment mechanism, it secured the seat into place. (*Id.*) A crew member first discovered this and reported the issue to BNSF. (*Id.*) Plaintiff also mentioned the seat's condition to management. (*Id.*) In response, BNSF asked Plaintiff if he felt it was safe to still use the vehicle. (*Id.*) He said that it was safe to use within the railyard. (*Id.*) So BNSF did not require him to ride in the car outside the yard. (*Id.*)

On February 10, 2022, Plaintiff rode in the car with his coworkers. (*Id.* at PageID 218.) John Byrd drove, Plaintiff sat in the front passenger seat, and two other coworkers sat in the back. (*Id.*) Byrd drove through a section in the railyard that had two speedbumps close together. (*Id.*) Plaintiff claims that the way Byrd drove over the second speedbump injured him. (*Id.*) And in later administrative proceedings, Plaintiff alleged that Byrd intentionally drove over the

2

second speedbump to hurt him.  (*Id.*)  But Plaintiff did not report this to BNSF the day it happened.  (*Id.* at PageID 219.)  Rather he finished his shift without further incident.  (*Id.*)

Plaintiff returned to work the next day, February 11, 2022, and again rode with Byrd in the same vehicle, while sitting in the same seat, and in the same yard.  (*Id.*)  Plaintiff spoke with Terminal Manager Shawn Davis near the end of his shift.  (*Id.*)  He wanted BNSF to ask Byrd to use his "union seniority" to change assignments so he could work on a different job or on a different shift with someone other than Plaintiff.  (*Id.*)

BNSF contends that Plaintiff did not tell Davis that he thought Byrd tried to injure him the day before.  (*Id.*)  And Plaintiff claims that he "tried to tactfully suggest reasons to Davis that what happened was 'intentionally done' without outright accusing Byrd of deliberately injuring him."  (*Id.*)  He believes Davis understood this conversation as a report that Byrd intentionally hit a speed bump at high speeds while engaging in "horse play."  (*Id.*)  But Plaintiff did not tell Byrd he was injured at that time.  (*Id.*)  BNSF disputes whether Davis had any reason to think that Plaintiff was reporting an injury or whether he though Byrd had intentionally tried to hurt Plaintiff.  (*Id.* at PageID 220.)

Either later that evening or early the next morning on February 12, 2022, Plaintiff began experiencing headaches, migraines, and neck and back pain.  (*Id.*)  He "immediately attributed all of those issues to the way Byrd drove over the second speedbump."  (*Id.*)  Plaintiff was off work for the next few days and again failed to report his injury during that time.  (*Id.*)

He returned to work on February 15, 2022, and spoke with Davis again.  (*Id.*)  The conversation started with Plaintiff asking Davis whether he had talked with Byrd about moving to another shift or job.  (*Id.* at PageID 221.)

3

What Plaintiff then disclosed to Davis is disputed. BNSF asserts that only after this did Plaintiff tell Davis that his back pain "might" be attributable to Byrd's driving. (*Id.* at PageID 221.) But Plaintiff claims he told Davis that Byrd's actions "definitely" caused him back pain. (*Id.*) But the parties agree that Davis then asked Plaintiff if he needed medical attention. (*Id.*) BNSF says Plaintiff told Davis he did *not* need medical attention. (*Id.*) Plaintiff says he told Davis that he *needed* medical attention and that his pain would require a specialist. (*Id.*) Either way, the Parties agree that Plaintiff returned to work after this and worked the next two days without incident. (*Id.*)

On February 18, 2022, Plaintiff gave Davis a note explaining that Byrd intentionally injured him while driving over the speedbump at a high speed. (*Id.* at PageID 222.) BNSF claims that this is the first time Plaintiff made that report. (*Id.*) But Plaintiff contends he had explained the situation to Davis a week earlier. (*Id.*) BNSF also claims that Plaintiff told Davis and another supervisor that he would not have reported the incident if BNSF had removed Byrd from the job like he requested. (*Id.*) Plaintiff asserts that he never made that statement, and that it is a "deliberate lie." (*Id.*)

**I.   Procedural Background**

Plaintiff "made a formal complaint spelling out that Byrd had deliberately attempted to injure him." (*Id.*) BNSF used its police officers to investigate this workplace-violence claim. (*Id.* at PageID 223.) Those officers interviewed Plaintiff and asked whether he wanted to press charges against Byrd. (*Id.*) Plaintiff declined.[2] (*Id.*) The officers also interviewed Byrd and the

---

[2] Plaintiff disputes this fact "to the extent it implied [he] did not believe charges were warranted. [Plaintiff] believes it was BNSF's responsibility to pursue charges against Byrd, and believed BNSF would 'deal with it.'" (*Id.*)

other two passengers. (*Id.*) Their version of events failed to corroborate Plaintiff's claim. (*Id.*) And so the officers concluded that they could not verify Plaintiff's allegations. (*Id.*)

BNSF management allegedly believed that Plaintiff's statements on February 15 and 18, 2022, were false and that he therefore potentially violated its rule that employees must not be "immoral." (*Id.*) Plaintiff believes that BNSF "fabricated" that position "after [Plaintiff] resisted pressure . . . to change his statement regarding his injury and the manner in which he was injured." (*Id.*)

BNSF held an investigative hearing on September 20, 2022, to determine whether Plaintiff engaged in immoral conduct. (*Id.* at PageID 224.) Director of Labor Relations Mark Newman conducted the hearing. (*Id.*) Plaintiff and his union representative had the right to raise objections, question witnesses, offer exhibits, call their own witnesses, and make closing statements. (*Id.*) At the end of the hearing, Newman recommended that BNSF terminate Plaintiff's employment because his "immoral comments" violated its rules. (*Id.*)

When a BNSF employee is subject to dismissal, BNSF uses its progressive disciplinary policy called the Policy for Employee Performance and Accountability ("PEPA"). (*Id.* at PageID 225.) That policy requires BNSF to submit the transcript of the investigation and related exhibits to the PEPA team for review. (*Id.*) Director of Labor Relations Stefanie Detlefsen was the PEPA team member who reviewed Plaintiff's investigation. (*Id.*) She recommended a "standalone dismissal" for Plaintiff because of his comments on February 15 and 18, 2022. (*Id.*)

General Manager Tony Fulton received the dismissal recommendations from Newman and Detlefsen. (*Id.*) But he was not bound to follow them. (*Id.*) Fulton reviewed the materials and concluded that BNSF should dismiss Plaintiff for his "immoral comments." (*Id.* at PageID 226.) BNSF contends that Fulton made his own independent dismissal determination. (*Id.* at

5

PageID 225.) It adds that Fulton "believed the testimony of the supervisors who testified at the hearing that [Plaintiff] made [the] comments . . . over the testimony of [Plaintiff] denying that he made those comments." (*Id.* at PageID 226.) But Plaintiff believes Fulton's determination was not independent because "it rested entirely on the record built by biased subordinates, with no independent inquiry into the matter." (*Id.* at PageID 225.) In any event, on September 30, 2022, BNSF told Plaintiff that it was dismissing him because of his "immoral comments." (*Id.*)

And on October 3, 2022, Plaintiff filed a complaint with the Occupational Safety and Health Administration ("OSHA"). (*Id.*) The Complaint Summary reads:

> Protected Activity: Complainant reported an unsafe work vehicle that resulted in a work-related injury on 02-10-2022.
> Adverse Action: Terminated.
> Nexus: Complainant believes they were subject to retaliation because of their protected activity.

(ECF No. 11-11; *see* 22-1 at PageID 227.) OSHA issued its findings about two months later. (ECF No. 22-1 at PageID 227.) It concluded that Plaintiff failed to establish a causal connection between the protected activity and adverse action. (*Id.*) It also concluded that BNSF terminated Plaintiff "for his unethical reporting of an injury in bad faith and violating [BNSF's] General Code of operating Rules, 1.6, Conduct for his immoral and dishonest actions." (*Id.*)

Plaintiff then requested a hearing with an Administrative Law Judge ("ALJ"). (*Id.*) The ALJ held a two-day trial in September 2023. (*Id.*) Before the ALJ issued an opinion, Plaintiff retained counsel and sued here in early 2025. (*Id.*; *see* ECF No. 1.) He claims under FRSA that his "[p]rotected activity includes reporting an injury."[3] (ECF No. 1 at PageID 7.) His Complaint adds that this protected activity was a contributing factor in his termination and that BNSF would

---

[3] Although Plaintiff also brought a negligence claim under the Federal Employers' Liability Act (ECF No. 1 at PageID 6), BNSF's Motion for Partial Summary Judgment did not address that claim.

6

not have terminated him absent his protected activity.  (*Id.*)  Plaintiff also asserts a negligence claim under the Federal Employers' Liability Act.  (*Id.* at PageID 6.)  BNSF answered.  (ECF No. 8.)  And it moved for summary judgment on Plaintiff's FRSA claim about a month later.  (ECF No. 11.)

## **LEGAL STANDARD**

A familiar standard applies here.  Courts grant summary judgment only when, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  *Render v. FCA US, LLC*, 53 F.4th 905, 913–14 (6th Cir. 2022) (quoting Fed. R. Civ. P. 56(a); *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs*, 974 F.3d 652, 660 (6th Cir. 2020)).  "A dispute of a material fact is genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  *Kirilenko-Ison*, 974 F.3d at 660 (citation omitted).  A party must support its claim that there are, or are not, genuine disputes of material fact by citing to evidence in the record.  Fed. R. Civ. P. 56(c)(1)(A).  Importantly, courts do not make credibility determinations or weigh the evidence when ruling on a summary judgment motion.  *Martinez v. Cracker Barrel Old County Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (citation omitted).

## **ANALYSIS**

Defendant moves for summary judgment on Plaintiff's FRSA claim for two reasons—he failed to exhaust his administrative remedies, and he cannot establish causation.  Defendant alternatively argues that Plaintiff has no right to wage damages.  Plaintiff opposes the Motion.  The Court addresses the Parties arguments below.

7

I.      **Administrative Exhaustion**

Congress enacted the FRSA to promote railroad safety. *See* 49 U.S.C. § 20101. Its employee-protections provision makes it illegal for railroad carriers to "discharge, demote, suspend, reprimand, or in any other way discriminate against an employee" for engaging in protected activities such as notifying the carrier "of a work-related personal injury" or "reporting, in good faith, a hazardous safety or security condition." *Id.* at § 20109(a)(4) and (b)(1)(A).

The FRSA creates a private right of action for employees to enforce their statutory protections. *Id.* at § 20109(d). But employees must first exhaust their administrative remedies. They can do this by first filing a complaint with the Secretary of Labor. *Id.*; *see* 29 C.F.R. § 1982.103 (directing retaliation complaints to OSHA). After OSHA issues its findings and a preliminary order, the employee can object to the order and request a hearing with an ALJ. 29 C.F.R. § 1982.106. They can eventually challenge the final agency decision in a federal court of appeals under the Administrative Procedure Act. *See* 49 U.S.C. § 20109(d)(4).

But there is another way to bring a FRSA claim to federal court. Employees can use their so-called "kick-out" right if the "Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee." *Id.* at § 20109(d)(3); *see Janik v. CSX Transportation Inc.*, No. 21-781, 2024 WL 3510872, at *1 (S.D. Ohio July 23, 2024) (discussing the "kick-out" right). This "kick-out" right permits employees to "bring an original action at law or equity for de novo review in the appropriate district court of the United States." 49 U.S.C. § 20109(d)(3).

The Parties here do not dispute that Plaintiff timely sued here by using his "kick-out" right. *Cf. Lemon v. Norfolk S. Ry. Co.*, 958 F.3d 417, 418 (6th Cir. 2020) ("After the statutory deadline for a ruling came and went, he leapfrogged the agency by suing in federal district court,

8

taking advantage of the Act's "kick-out" provision."). His OSHA complaint states that BNSF retaliated against him for "report[ing] an unsafe work vehicle that resulted in a work-related injury on 02-10-2022." (ECF No. 11-11.) And in his complaint here, Plaintiff alleges retaliation for reporting a workplace injury. (ECF No. 1 at PageID 7.)

BNSF argues Plaintiff's claims before OSHA and those he asserts here do not line up. That is, his OSHA complaint identified reporting an *unsafe work vehicle* as the protected activity and this lawsuit identifies reporting a *workplace injury* as the protected activity. (ECF No. 11-1 at PageID 45–46.) In other words, Plaintiff's OSHA complaint only alleged retaliation from reporting an unsafe work vehicle. And he now "seeks to switch gears" by claiming retaliation for reporting a workplace injury. (*Id.*) To BNSF, this means that Plaintiff did not exhaust his administrative remedies for his workplace-injury claim. (*Id.*)

But Plaintiff sees his OSHA complaint differently. He claims that BNSF's argument "finds support in neither grammar nor logic" because it ignores the last part of the sentence in his OSHA complaint—that the unsafe vehicle "*resulted in a work-related injury*." (ECF No. 22 at PageID 205.) He also points out that BNSF's framing rests on a one-page form prepared by OSHA and ignores that "whether BNSF terminated [Plaintiff] for reporting his injury was a primary focus of the administrative proceedings." (*Id.* at PageID 206.)

Defendant's reading of Plaintiff's OSHA complaint is less persuasive when compared to Plaintiff's position. Take his second point first. Plaintiff's prehearing statement before the ALJ allege that BNSF terminated him "for reporting a work-related injury under the [FRSA]." (ECF No. 11-3 at PageID 70.) He asserts essentially the same claim here. Plaintiff is therefore not "changing gears" by bringing this claim here as BNSF asserts. Contrary to BNSF's position, Plaintiff is not bringing new allegations of retaliation for the first time in federal court. *Cf. Hand*

9

*v. CSV Transp., Inc.*, No. 19-941, 2021 WL 963584, *6 (S.D. Ohio Mar. 15, 2021) (dismissing claims that the defendant retaliated against the plaintiff for reporting safety hazards and regulatory violations because his administrative charge listed retaliation for reporting an injury); *Gibbs v. Norfolk S. Ry. Co.*, No. 14-587, 2018 WL 1542141, at *5 (W.D. Ky. Mar. 29, 2018) (dismissing claims because the OSHA complaint failed to allege the same adverse actions mentioned in a responsive pleading).

Turn now to Plaintiff's first point. The OSHA complaint describes his protected activity as "*report[ing]* an unsafe work vehicle that resulted in a *work-related injury* on 02-10-2022." (ECF No. 11-11 (emphasis added).) And the OSHA complaint adds that he believes he was "subject to retaliation" because of this protected activity. A fair reading of the sentence connects the unsafe work vehicle and the alleged work-related injury. The Court declines to constrict Plaintiff's OSHA complaint in a way that ignores this straightforward understanding. The Court finds therefore that BNSF is not entitled to summary judgment because of Plaintiff's alleged failure to exhaust his administrative remedies.

**II.     Merits**

BNSF's causation argument goes to the merits of Plaintiff's allegation. Retaliation claims under the FRSA are governed by a congressionally adopted burden-shifting framework. *See Consol. Rail Corp.*, 567 F. App'x 334, 337 (6th Cir. 2014) (citation omitted). To prevail, a plaintiff must show that "(1) he engaged in protected activity; (2) the employer knew that he engaged in protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action." *Id.* (citation omitted); 29 C.F.R. § 1982.104(e)(2) (listing prima facie elements). The plaintiff bears the initial burden of establishing "by a preponderance of the evidence that protected activity was a

10

contributing factor in the adverse action alleged in the complaint." *Consol. Rail Corp.*, 567 F. App'x at 337 (citing 29 C.F.R. § 1982.109(a)). The burden then shifts to the defendant to demonstrate "by clear and convincing evidence that it would have taken the same adverse action in the absence of any protected [activity]."[4] *Id.* (citing 29 C.F.R. § 1982.109(b)).

BNSF attacks only the contributing factor prong here. (ECF No. 11-1 at PageID 48–50.) It argues that Plaintiff's own administrative stipulations and testimony prevent him from showing that reporting an injury was a "contributing factor" in his dismissal. (*Id.* at PageID 48.) Plaintiff offers three rebuttals: (1) his OSHA filings are "legally irrelevant"; (2) even if they were relevant, they contradict BNSF's arguments; and (3) BNSF's motion is premature. (ECF No. 22 at PageID 207.) Plaintiff's answers to each rebuttal opens the door to the next. So the Court prods through them one at a time.

### A.   Administrative Filings and Testimony

Because the Court reviews the complaint de novo, 49 U.S.C. § 20109(d)(3), Plaintiff contends that he is not limited by his administrative stipulations and testimony. (ECF No. 22 at PageID 207–08.) He interprets § 20109(d)(3)'s use of "de novo" as allowing him to "start fresh in the district court." (*Id.* at PageID 208.) According to Plaintiff, this "leaves the prior administrative proceedings, including pre-hearing submissions, irrelevant." (*Id.*) BNSF, on the other hand, argues that Plaintiff "remains bound by the facts that he stipulated and/or testified to." (ECF No. 23 at PageID 323.) The Court agrees with BNSF on this point.

---

[4] Congress adopted this framework from the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century. *Id.* But the Sixth Circuit has questioned whether the Act's "rules and procedures" and "burdens of proof" apply in district court proceedings. *Lemon*, 958 F.3d at 419. It also questioned whether the "contributing factor" causation standard applies. *Id.* But the Sixth Circuit declined to resolve those questions. *Id.* It has not addressed those questions since. And the Parties do not raise an issue with the framework here. So the Court applies the *Consolidated Rail Corporation* standards. *Cf. Hand*, 2021 WL 963584, *6 n.4 (similar reasoning).

That is because Plaintiff confuses the Court's de novo review here. *See* 49 U.S.C. § 20109(d)(3) ("[T]he employee may bring an original action at law or equity for de novo review[.]")  De novo review means that the Court can consider his claim without deferring to the agency's determinations.  It does not mean that he gets to throw out his earlier statements or that this Court does not consider the record from the pre-hearing stage.  *Cf. Lemon*, 958 F.3d at 418 ("We thus consider his claim without deferring to the agency's determinations." (citing 49 U.S.C. § 20109(d)(3)).  Hence, de novo *review*.  So in that sense he does get a fresh start.  But it does not render his previous filings and testimony "legally irrelevant."  This is why the Court considers them below.

### B. Contributing Factor

Plaintiff must prove that reporting an injury was a "contributing factor" to his dismissal. *See Consol. Rail Corp.*, 567 F. App'x at 337 (stating that the employee must show, among other things, that "the protected activity was a contributing factor in the unfavorable personnel action"); *Johnson v. Grand Trunk W. R.R. Co.*, 454 F. Supp. 3d 667, 674 (E.D. Mich. 2020) (discussing "contributing factor" under 49 U.S.C. § 20109(d)(3)).  A contributing factor is "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision."  *Consol. Rail Corp.*, 567 F. App'x at 338 (citations omitted).  Plaintiff can demonstrate this through direct or circumstantial evidence.  *Johnson*, 454 F. Supp. 3d at 674.

District courts have found that circumstantial evidence of a contributing factor may include:

> (i) temporal proximity; (ii) indications of pretext; (iii) inconsistent application of an employer's policies; (iv) shifting explanations for an employer's actions; (v) antagonism or hostility toward a complainant's protected activity; (vi) falsity of an employer's explanation for the adverse action taken; and (v[ii]) change in the employer's attitude toward the complainant after he engages in protected activity.

12

*Johnson*, 454 F. Supp. 3d. at 674 (citation omitted); *Hand*, 2021 WL 963584, *7 (quoting same). If Plaintiff manages to prove a contributing factor, BNSF is still entitled to summary judgment if it proves by clear and convincing evidence that it would have made the same decision absent Plaintiff's protected activity.  *See Consol. Rail Corp.*, 567 F. App'x at 337.

BNSF argues that Plaintiff's administrative stipulations and testimony prevent him from showing a contributing factor.  (ECF No. 11-1 at PageID 48.)  It notes that Plaintiff said Newman—the hearing officer—believed he made immoral comments and recommended dismissal because of that belief; Detlefsen—the PEPA representative—recommended his dismissal based on those immoral comments; and Fulton—the decisionmaker—believed his supervisors' testimony over Plaintiff's own.  (*Id.* at PageID 49 (citing to the record).)  In other words, BNSF asserts that Plaintiff already conceded that BNSF's belief about his misconduct was genuine.

Plaintiff counters with citations to the record.  In his stipulated facts before the ALJ, he denied making the statements BNSF relies on and he asserts that he believed, and still believes, that BNSF employees fabricated the statements that resulted in his dismissal.  (*See* ECF No. 22 at PageID 209.)  Plaintiff argues this precludes summary judgment under the "cat's-paw" theory. (*Id.*)  According to that theory, "a biased subordinate who lacked decision[-]making power used the formal decisionmaker as a dupe in a deliberate scheme to bring about [his] adverse employment action." (*Id.*)  *See Gibbs*, 2018 WL 1542141, at *6 (discussing the cat's-paw theory in a FRSA case).

This argument has purchase.  Plaintiff disputes that he made the statements to his supervisors—that is, the "immoral" comments that led to his dismissal.  He has disputed that he made them all along.  The Court does not weigh the evidence at this state of litigation.  And if

Plaintiff's version of events is true, it could be enough to support a cat's paw theory. *See Consol. Rail Corp.*, 567 F. App'x at 338 (accepting an ALJ's cat's-paw finding during FRSA administrative review). Not only that, but Plaintiff testified that BNSF applied its prohibition on "immoral" behavior unevenly to Plaintiff. (*See* ECF No. 22 at PageID 210.) If proved, this is circumstantial evidence of a contributing factor. The Court finds that the evidence here presents a "sufficient disagreement" that is not "so one-sided that [BNSF] must prevail as a matter of law." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838 (6th Cir. 2015) (citation omitted).

To be sure, it is undisputed that no decisionmaker at BNSF believed Plaintiff's version of events. But considering the evidence in the light most favorable to Plaintiff, there are questions of fact about whether those who reported Plaintiff's statements up the line lied about him out of retaliatory animus, and whether the decisionmakers inconsistently applied BNSF's morality policy. Those disputes of fact are enough to block summary judgment for now.

### C. Discovery

This still leaves a question about next steps. Because BNSF moved for summary judgment before discovery has taken place , Plaintiff seeks to "gather through discovery [], among other things, evidence that those who reported the statements leading to [Plaintiff's] termination lied out of retaliatory animus, and the decisionmakers who fired Walker applied the rule unevenly to terminate him due to retaliatory animus." (ECF No. 22 at PageID 211.) BNSF opposes any discovery related to Plaintiff's FRSA claim.[5] (ECF No. 23 at PageID 318 (citing

---

[5] The Court has already met with the Parties and established a Scheduling Order. (ECF No. 30; *see* ECF No. 35.)

Rule 56(d).)  But if the Court permits FRSA-related discovery, BNSF asks the Court to limit it to Plaintiff's two causation theories.  (*Id.* at PageID 320.)

The Court agrees with BNSF's suggested limitation on discovery.  Discovery on Plaintiff's FRSA claim is therefore limited to "whether the two supervisors who reported his statements 'lied out of retaliatory animus,' and whether the decisionmakers who fired him applied the BNSF's rules 'unevenly to terminate [him] due to retaliatory animus.'"  (*See id.*)

### III.     Wage Damages

That leaves wage damages.  BNSF believes that Plaintiff cannot recover wage damages on his FRSA claim because he testified at the ALJ trial that his injury prevented him from working.  (ECF No. 11-1 at PageID 51.)  Yet BNSF also states that Plaintiff might recover wage damages if he presents evidence of his ability to work after the date of the ALJ trial.  (*Id.*)  That evidence is not in the record.  So it is premature for the Court to determine as a matter of law whether Plaintiff has a right to wage damages.

## CONCLUSION

For the reasons above, the Court **DENIES** BNSF's Motion for Partial Summary Judgment **WITHOUT PREJUDICE**.  After the parties engage in discovery, BNSF may, if it wishes, move again for summary judgment.

**SO ORDERED**, this 23rd day of January, 2026.

  s/ Thomas L. Parker
  THOMAS L. PARKER
  UNITED STATES DISTRICT JUDGE